The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is Christiane Josue Diaz-Ortiz v. Merrick v. Garland, appeal number 19-1620. Attorney Beal, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court, Kristen Beal on behalf of Petitioner Christian Josue Diaz-Ortiz. Mr. Diaz-Ortiz asked this Court to grant him asylum or, in the alternative, to remand his case for new immigration proceedings with clear instructions that the government cannot rely on evidence which does not comport with due process to support its conclusion that Mr. Diaz-Ortiz is an active and verified gang member. The evidence submitted by the government in Mr. Diaz-Ortiz's case, what has been referred to as the gang packet or the DHS packet, is not reliable for its intended purpose, which is to prove that Mr. Diaz-Ortiz is an active, verified member of MS-13, one of the most violent and ruthless gangs in the world. The gang packet is fundamentally unfair and prejudicial, and the IJ's reliance on this evidence to reach this adverse credibility determination violated Mr. Diaz-Ortiz's due process rights. This adverse credibility... Counsel, excuse me. One of the due process arguments you make is the failure to provide notice to your client that he was included in the database and the lack of an opportunity to challenge that inclusion. The government points out that before the merits hearing, where the database became so important, you were aware of its existence because it was used at the bond determination hearing. I think the government's point is that you had a couple of months in which you could have challenged it and fully anticipated that it would be used at the merits hearing, yet you did not in any way challenge it. You didn't ask the Boston Police Department to remove it. You didn't use the freedom of information law to get at it. So I mean, how do you respond to that challenge, to that component of the due process argument? Thank you, Your Honor. Our first point is that individuals, including Mr. Diaz-Ortiz, do not receive notice that they have received points in the gang database, nor that they have been verified as a gang member within the database. The BIA, in its decision, assumed that there were mechanisms by which Mr. Diaz-Ortiz or others could remove themselves from the database. And this is not true. There are currently no mechanisms by which individuals can have their names removed from the database. And so there are no procedural safeguards to prevent erroneous deprivation, and this also violates due process. In terms of us having notice of the gang packet as early as the bond hearing, we note that this gang packet and its contents has actually changed over time. At each proceeding, we had received a different gang packet. For example, at the bond hearing, we received one version of the gang packet that had different entries, different annotations, and different point accrual. At the asylum hearing, you were presented, for the first time, a different gang packet. Again, this had different points, different entries, and it also appeared to contain hand-annotated notes and highlights within the gang packet. But you were not, Shirley, you were not surprised by the fact that the government would use that gang packet in some ways. Isn't that correct? That's correct, Your Honor. We would not be surprised that the government would have a gang packet at the hearing. However, we were surprised at its contents and the fact that nothing within the gang packet substantiated their ultimate conclusion that Christian was an active and verified gang member. We also were surprised that the government contended and the IJ accepted that the burden would actually be on Christian, or sorry, excuse me, Mr. Diaz-Ortiz, to prove that he was not a gang member and to prove that those also within his gang packet that he was seen associating with were not gang members. What about the proposition that you could have demanded that the officers attributed to the gang packet that they should, personally, should have asked for a continuum to see that that was done, that you did not take the steps, perhaps, that you should have to address your claim that the information there was unreliable. You asserted unreliability, but you took no steps to try to establish that proposition. We would argue that requiring Mr. Diaz-Ortiz to request or to affirmatively attempt to prove that he was not his burden, it is the government's burden to corroborate and substantiate the evidence that it is presenting to the court as evidence, conclusatory evidence, that Mr. Diaz-Ortiz is an active, verified gang member. They did not make their witnesses available, including any of the police officers that made entries into the database, nor Officer Sean Connolly, who is actually the officer that put what we are calling the DHS packet or the gang packet together. Ms. Beale, you have several times mentioned due process. How do we get to the due process issue? If what you say about the gang database and its lack of reliability and its other limitations were correct, wouldn't, before we get to due process, wouldn't we first consider a substantial evidence test and whether it provided any reliable information to support the finding, and if it didn't, we would then, in our usual practice, avoid getting to an unnecessary constitutional issue? I think it's difficult because the two issues are very intertwined, and so in the asylum proceedings, the standard is substantial evidence. In Mr. Diaz-Ortiz's case, he did provide substantial evidence to substantiate his asylum claims. Five minutes remaining. However, the government has used evidence that violates his due process rights to substantiate their claims that he is a gang member. Suppose the government just puts in evidence, all right, here's the evidence. We have a Ouija board, and the Ouija board says he's a gang member. Well, you laughed, but I think your argument is this is not that different. Wouldn't we just say that's so unreliable that it doesn't provide an evidentiary basis for the finding and avoid getting to a due process issue? I would certainly make that initial finding, and I think part of what the government is arguing is that, for example, the facts underlying the gang packet, and perhaps this is also what you're alluding to, but the facts in that packet, they say what they say, and we did not dispute that those facts were, in fact, correct or true. The issue is that those underlying facts that the government is relying on in the gang packet do not support or substantiate the gang label or designation that Mr. Diaz-Cortez received. What Judge Kayotte is trying to ask, and doing it very well, I thought, is that if the information in the gang package on its face presents nothing but innocent conduct, and therefore you can't draw a negative inference from something that is just innocent conduct, wouldn't it be more appropriate if we were just to conclude that there was not substantial evidence to support the agency decision? Yes, I think that is a possibility. Can I ask you, then, one question about that, which is I think you're right, that there are different types of facts in the gang database. One set of facts concerns who he's associating with, and I take your point there is that's effectively a zero with respect to probative value, because we don't have any reason from the face of the document to credit that the people he's associating with are, in fact, gang members, and you have the affidavit from your expert. Making that exact point, but there's other evidence in it which are facts of a different nature, such as his possession of the bike lock, the statements he's given about whether he takes the bike or the train, and with respect to those, I take it your position is that the mere fact that he has a bike lock in his backpack and that he has it in East Boston doesn't tell you that he is a member of one of the world's most notorious criminal gangs. There's the separate question about whether he lied or was inconsistent in his response about why he has the bike lock, and I just want to confirm something with you about that. It seems to me the IJ and the BIA both think a critical reason to doubt his credibility with respect to the bike lock is this statement that he says he never took the train. As I read the transcript when he's first asked about what modes of transportation he takes, I need him to make relatively clear that in East Boston he does not take the train. So, while it's not entirely clear to me, because neither the IJ or the BIA gets into this, in the incident in which he's questioned about having the bike lock, at that time is he living in East Boston? Do we know that from the record? We do, your honor. So, one first point I'd like to make is that his testimony regarding that he had the bike lock for his bike is also consistent with actual FIO report that documents this incident. He told police officers at that time it was for his bike. Second point being at that time when the police questioned him about the bike lock and stopped him, he was living in East Boston, and that is on the record. If you look at the FIO reports, it will have his address on the report at the time, and we certainly agree that if you read the transcript in its entirety, that he does consistently testify that the bike is for, or the bike lock is for his bike, and that when he was expired. Counsel, the relevant part of the gang database says that your client and two others were stopped at Bremen Street slash Marion Street. I gather that's East Boston, is that correct? That's correct, and that particular intersection is actually next to a huge park. So, it's a park where a lot of Latinx youth hang out after school, so that intersection is close to that park. If I might, just in relation to that, on that same report, in small print, there's a notation that assumes such importance. The notation is, MS-13 gang members commonly carry large metal chains with locks to be used in gang-related assaults. That statement, that's what it says in that fashion without any attribution, no explanation of what that's based on. Do you have any understanding of where that comes from? Who put it in there? What's its origin? Why it's there? That's part of our issue with the gang packet. We don't know where these, this is what we were calling the hand-added, handwritten note annotations. As you've pointed out, those annotations are not present in the original FIO report. Somebody added those after. It's our understanding that Officer Sean Connelly, who's the one that put the packet together, may have been the one to add those notes, but we do not know. We would need declarations to confirm and authenticate where those notes came from. Ms. Beal, before we close with you, I just want to check with the judges and see if there are any additional questions. I'm good. Why don't you take 30 seconds and sum up then? Okay. Thank you, Your Honors. Again, we would ask that this court grant Mr. Diaz-Ortiz asylum or, in the alternative, remand his case back to immigration court with clear instructions that the government cannot rely on evidence that either is not supported by a substantial evidence standard or does not comport with due process. Thank you. Thank you. If you would mute your video and audio at this time, we will hear from Mr. Ahmed. Chief Judge Howard, do you mind if I take five seconds to shut my phone off? I forgot to do that. I apologize. Of course, Judge Toms. Thank you. Whenever you're ready, Mr. Ahmed. May it please the court, Samir Ahmed on behalf of the amici law professors. I'd like to make three points why the admission of the gang packet either violated due process or does not support a finding of substantial evidence. I'd first like to start with Judge Kayada and Judge Thompson's question. You do not have to reach the due process question. In most circuits, it appears the circuit does reach the question of whether or not the gang packet should be admissible because it was fundamentally unfair or unreliable, and that goes to due process. But the second circuit has actually resolved the issue on substantial evidence grounds in the Lin and Balachova cases that we cite in our amicus brief. It does exactly what you suggested, Judge Kayada, where the gang packet is so unreliable to support the conclusion that Mr. Diaz-Ortiz was a gang member that it cannot support a finding that the adverse credibility determination here was supported by substantial evidence. Just to be clear, you're saying that unreliability determination can be made completely independent of any due process violation. Is that your point? Yes, and that's how the second circuit resolves it because under the doctrine of constitutional avoidance, instead of reaching the due process question, instead it says is this piece of evidence so unreliable to support the conclusion or to support a finding of substantial evidence, and here the gang packet, because of its reliance on this highly flawed point system and the underlying FIO reports, as Judge Barron mentioned, don't provide any sort of careful fact-finding to establish Mr. Diaz-Ortiz is a gang member, would not support a finding of substantial evidence. Let me ask you just one question, Mr. Smear, about that point, which is who has the burden with respect to the credibility issue that we're dealing with? I'm a little confused. I mean, he has the burden to show that he's entitled to asylum. They're then trying to say that he's not credible. The BIA is then affirming on clear error that finding of non-credibility, which is based on a finding that he, in part, is a gang member. I'm getting lost by the time I get to what we're supposed to do. Who has the burden? And I think it may be somewhat important in assessing this substantial evidence point. The burden here is the burden on the admission of the finding. It's about the reliability of the evidence to support a substantial evidence conclusion. And it's whether or not that evidence is reliable or not. And I think that the government has the burden to establish the reliability of the evidence that it's producing. And either the evidence is reliable on its face when it's a hearsay document. Here, the evidence is not the BIA. The BIA is not affirming a finding that the petitioner's own story on its own, considered on its own, doesn't hold up. It's reviewing a finding that the evidence that impeaches it is sufficiently strong to impeach it. And therefore, it's the burden on the person entering that evidence to show that it's reliable enough to have that impeaching force. Exactly, Your Honor. And that's exactly how Banat, Aneem, Lynn, Balachova, all these cases from other circuits, they assess. Is the reliability of the evidence to impeach and to support an adverse credibility determination reliable on its face? If not, then the government is the one that has the burden to corroborate it either by providing witnesses that can be subject to cross. Here, the government provided no burden whatsoever. And finally, that goes to Judge Diaz-Ortiz. He was the government's burden to corroborate this evidence and it wasn't sufficiently reliable on its face. Mr. Diaz-Ortiz never had any sort of independent obligation to request these witnesses be subject to cross or even try to find some sort of procedure that would allow him to take him out. It's clear that any of those procedures that the government mentions, a Freedom of Information Act request or a lawsuit, don't comport with Matthews v. Eldridge. The whole safeguards test is whether there's sufficient procedures to prevent the risk of erroneous deprivation before the deprivation occurs. Not these slow type of procedures that in no way comport with due process. For those reasons, your honor, the admission of the gang packet either violates due process or the gang packet itself cannot support a finding of substantial evidence. Counsel, if I might, you started your argument and you just again referred to the admissibility of the evidence. I don't understand why you focus so much on admissibility. I mean, in court proceedings, we frequently distinguish between the admissibility of the evidence and the weight to be ascribed to it. It's been pointed out that, for example, the federal regulations that we haven't spoken much about the third issue here, those do not provide a basis for exclusion. They're not rules of exclusion. So admissibility seems somewhat off point. The question is really what weight, if any, should be attributed to this evidence that if it's unreliable, it doesn't deserve any weight. I mean, isn't that a more appropriate way to look at this? I agree with you, Judge Lopez. It's just some of the due process cases talk about the admission of the gang packet and whether or not it's admissible of the unreliable evidence and the due process question says you can't admit the evidence. When it goes to the weight of the evidence, I think it gets back to Judge Kayada and Judge Thompson where it becomes an issue of whether or not the evidence is so unreliable that it can't support a finding of substantial evidence. Aren't all the due process cases you're talking about foreign investigative reports? They're State Department reports. So, I mean, the investigation sometimes... The idea there seems to be that the problem is that the persons who are associated with the investigation are beyond the reach of the petitioner to cross-examine. That's just not true here. So there might be a special reason to think there's a due process problem in that circumstance that wouldn't apply here. But that wouldn't bear on the fact that whether or not you could have called them on its face, this just doesn't have the kind of probative weight that could support an adverse credibility finding. Those two things just seem easily disentangled. Your Honor, you could disentangle them that way. The way I read it is that in both those cases, the government failed to meet its burden to corroborate the evidence because the reports on them face. In those cases, a report on its face didn't support a fraud allegation, and here the report on its face didn't support the gang allegation. And so I think there is a due process violation, but it could also be addressed under substantial evidence if this court wants to go that way. Additional questions of Mr. Ahmed by members of the court? I just wanted to ask one last question, please. Counsel, you said that you weren't necessarily relying on an admissibility standard, but whereas we do have relaxed rules of evidence in these proceedings, these immigration proceedings, isn't it true, though, that evidence can be so unreliable as to be inadmissible? Exactly, Your Honor, and I think that's what the courts talk when they say due process. It says highly unreliable hearsay raises due process concerns. When the evidence is so unreliable on its face, then it shouldn't be admitted in the first place, and I think that's where the due process clause is kind of the floor on the admissibility issue. Counsel, I do have another question. Maybe this should have been addressed to prior counsel, and if you feel it should have been, don't hesitate to say so, but just purely on the assumption that this might require a remand, what in your judgment should that remand look like? I mean, I know there's a suggestion that we could perhaps we should grant a SOTA. That would be quite unusual and unlikely outcome, so if there were a remand, what would it look like in terms of should it go back to a different IJ? Should the decision be based on the existing record, or should it be for supplementation of the record? What role, if any, should the gang database play in those proceedings, and could the government perhaps address some of the problems? What is your sense of what should happen on a remand, and what perhaps we should say about it, if anything? Your Honor, I think on remand, the court should say that the gang packet cannot be used to support any finding, whether it's an adverse credibility finding or anything else, because it's so unreliable. I don't think the government should be allowed a second bite at the apple. They had an opportunity to corroborate that designation. They had an opportunity to present witnesses, to explain the point system, to explain the FIO reports, the police officer's basis for the gang determination. They didn't do so, so I think if it was a remand back to the IJ, this IJ in particular seemed a little bit hostile, so I think a remand back to another IJ to rehear the case without the gang packet is probably what I think is the most appropriate remand in this case. Any more questions? All right. Thank you, Mr. Ahmed. If you would mute your video and audio, we'll hear from Mr. Moss for the government. Thank you, Your Honor, and may it please the court, Benjamin Mark Moss for the respondent, the Attorney General. After Mr. Diaz-Ortiz received a full and fair hearing with counsel and two expert witnesses, the agency found him not credible on two independent grounds and further found that he failed to corroborate his non-credible claim. The government asked the court to deny this petition for review for three sets of reasons, which I will briefly summarize. First, it was fundamentally fair to consider the gang evidence. It's not about the points. At least seven police officers on at least six occasions asserted personal knowledge that Mr. Diaz-Ortiz or his associates were gang members. Counselor, what does that mean? I mean, the information doesn't say I talked to this person and he admitted he's a gang member. It doesn't say I showed up at a scene and watched them beating up someone and the scene was obviously a gang-related incident. In a courtroom, if you say you have personal knowledge, you have to set forth the foundation for why you have that personal knowledge. None of that is in this package. We just have a conclusory statement with no factual assertions as to why that person has personal knowledge. I understand, Your Honor. There were actually some occasions where the officers would indicate that they had personal knowledge and I think there was a quote, and also verify the information by checking the gang database. I think we cite that in our brief. That's circular. We don't actually know if it's circular, Your Honor. There's no basis. We don't know that it's not. Well, and that kind of gets to the next point I was going to make, Your Honor, which is that Mr. Diaz-Ortiz had notice and the opportunity to respond. That cannot address the problem, which is that you are putting forward the evidence to impeach his credibility, and if the evidence is just circular about reports that have no foundation, how can it do that? If he felt that there was not sufficient foundation at the hearing, he could have... Suppose he just says nothing. You're putting it forward to impeach him. What in the document could support a finding that it's impeaching, if it's just circular references to conclusory statements? I wouldn't necessarily agree with that characterization, Your Honor, but I do understand the question. Why? Because... What in the record establishes a foundation for any of those conclusory allegations? How do we know the other people he was associating with were gang members? And I also need to know what in the record establishes that a bike chain is a gang weapon. There's one notation, there's one Boston Globe article, and the Boston Globe article doesn't set forth any foundation for its conclusory statements either. Your Honor, I will attempt to address all of your questions, and please, if I miss one, I know you'll point me back to it. Taking the last question first, the Boston Globe article, I believe, Your Honor, is referring to record at 1754 to 58, which said that a clique leader of the gang told his members to dress down and to carry a bicycle chain with a lock for a weapon instead of a gun or a knife, end quote. That article, I suppose it speaks for itself in the sense of what its bases were, but that is additional substantial evidence for the notion... Well, it doesn't though, because the reporter doesn't say I did an investigation and talked to X, Y, or Z, and the article doesn't say I was there. The article gives no information as to how it determined this information to be correct. Yes, Your Honor, I don't have anything to say that would be beyond what the record says. I agree with Your Honor's characterization of that article, but the fact is that it is substantial evidence because it is a source within the record that provides more than a scintilla of evidence for the idea that the chain and lock is something that is commonly used as a gang weapon. As to Your Honor's... Can I just clarify the government's position on that? If the evidence were only that he was found in this park with that chain and lock in his backpack, would you say that was substantial evidence to show that he was a member of MS-13? And let me reflect on that, Your Honor. I suppose he was found in Harvard Square with the chain. Without presuming to speak for the board on facts that it has not addressed, I would just speculate in my own personal opinion, because that's all I can give on this, that that may not be sufficient, but I would contrast that, Your Honor, if I may. So that suggests that what's critical to our understanding of what the BIA's finding is affirming is a finding that is reliant on the conclusion that he had that bike lock and had been associating with MS-13 members, correct? Yes, it was relying on those two things as well as the fact that his associations as the panel majority pointed out, were increasingly frequent contacts. The premise of that is that the people he was associating with were MS-13 members. And so that's just the next point I think you were going to address that Judge Thompson asked you. What in the gang packet provides a foundation for concluding that those people were in fact MS-13 members? There are a number of indications there, in addition to the points that the officers asserted their own personal knowledge, not just checking the database, but having personal knowledge, which we cited in our brief. There was also indications that they were carrying weapons. What you may recall, Your Honor, that there was one occasion where an individual that Mr. Diaz-Ortiz was associating with had a baseball bat concealed in his pants. Why does that show he's a member of MS-13? This by itself may not be sufficient to show, or it may, but I think that the important thing to focus on for that point is that the officers relying on their experience and their own knowledge had concluded, based on their own experience that they had developed as officers, had concluded that this was in fact not innocent conduct, based on their experience and their own past knowledge. Assuming it's not innocent conduct, why is it gang conduct? The officers had reason to believe that it was gang conduct, Your Honor, because of the increasing frequency of Mr. Diaz-Ortiz's association with people who the officers, by their own words, said that they knew to be gang members. And if I may explain why I think this is so important, it's not about whether he's a gang member. It's about whether he's telling the truth about the harm he fears. The whole reason that the board was looking at this was that he claimed to fear MS-13 in El Salvador. But if he in fact had all these contacts with people who are MS-13 gang members, or at least people who are believed to be in Boston, the agency was allowed to assess whether he was telling the truth. To suggest that the proposition that he is or is not a gang member is not at the heart of these proceedings is simply not plausible. The rejection of his credibility was based on his insistence. He stated, I'm not a gang member. To my knowledge, I don't associate with gang members. And then to challenge that proposition, the gang database is introduced on cross-examination. And on the basis of that impeachment, the IJ decides you're not telling the truth. You are a gang member. More probably than not, you are a gang member. And if you're a gang member, you can't be a good Christian. So to suggest that the question of whether he is or is not a gang member is not central to this proceeding is belied by the entire record. Your Honor, I take your point. But what I'm trying to emphasize is that his credibility and whether he is telling the truth is what was the agency's prerogative and what it was looking at. And the fact that he had all these contacts... There were two, Your Honor. One was the basis that he claimed to have had those... the harm that he feared from the gang members in El Salvador in contrast with the documented increasingly frequent associations with gang members in this country. And second, the alternative independent... How do we know they're gang members? It's... Yes, Your Honor, I understand... I totally agree with you. If there was... If the other guys, for instance, had the gang tattoo on some part of their body, that would be clear evidence that these people belong to a gang. Or if they wore the clothing of the gang, that would be some evidence. But there's nothing like that in the record. There's not even evidence that the locations were tagged with the gang symbolism. That's not in the record. I mean, there's ways to prove that these people were gang members. But we've done a thorough scouring and other than... I know he's a gang member with no foundation for why that person knows. There's just not anything in there. I would put, Your Honor, back to the conduct that was not necessarily innocent conduct. There's been some talk about innocent association, but that's not exactly what's going on here. There's drug use, there's trespassing, there's carrying weapons, there's being with people carrying weapons. Which is at least enough to raise an inference. They're smoking marijuana. That's correct, Your Honor. That's one of them. And all of this is enough to at least raise an inference. To raise a question, is he tell... Thank you. To raise a question, is he telling the truth? Your Honor, mindful of time, if I may address some of the points that came up to some of my colleagues. I think that there's some important points that the court was asking about. First is the question about surprise. I made some notes here. Just looking aside to what I'd written. The database did come up in the bond hearings. That's an administrative record, 1759. That was in October of that year. And that included... Did it change? That's what I'm getting at. Not materially, Your Honor. If you look at page 1786... How did it change? No, you say not materially. Why would it change? Unfortunately, I can't speak to that as I haven't prepared thoroughly on that precise question. But what I can say is that the material similarities are that they include those assertions of the officer's knowledge. So it shouldn't have come as a surprise that the agency was going to rely on this. Business records can get updated, but they don't usually change. Was it an update or was it a change? Your Honor, I'm afraid I'm not able to address that. They do appear to be materially similar. And they do both include the officer's assertions of knowledge, personal knowledge, that Mr. Diaz-Ortiz and others were gang members. If I may quickly turn to the question of burden of proof. The burden was never on Mr. Diaz-Ortiz to prove that anybody was or was not a gang member. The government carried its burden by putting forth the evidence that contained the officer's foundation of assertion of knowledge. In the government's view, you're not disagreeing that that evidence has to be strong enough to support the conclusion that it renders his statements inconsistent, right? I think I'm trying to grasp Your Honor's question. The evidence, the gang evidence, would have to be strong enough. It's a piece of paper, and it said gang. You would not agree that that would show he was lying. I understand. Yes, that's right, Your Honor. There does need to be some, indeed, some idea of... In that sense, the burden is on the government. Just in that limited sense, that it's got to be at least strong enough to make it possible for a reviewing court to say that the specific and cogent reason that the BIA gave for concluding that it was going to uphold the IJ's finding of non-credibility, which is predicated in part on this evidence about his association with gang members, is, in fact, strong enough to support that conclusion, right? Yes, the government, as a proponent of a piece of evidence, has the burden of... Okay, counsel, if I might, on that point, in the face... Evidence was introduced in cross-examination. Petitioner's counsel objected to it, said it was unreliable. It should not be admitted, and elaborated as to why it was unreliable. Then, after the hearing, submitted a 10- or 12-page brief elaborating on that assertion that it's unreliable and either should be excluded or should be given limited weight. In what way, if any, and I frankly couldn't find anything in the record, in what way, if any, did the government respond to that challenge that this evidence was unreliable and should not be considered? I don't... You did not submit a brief in response to that. I'm not aware of any argument that you made to try to meet what you acknowledge is your burden to establish that a liability was out. I don't think the government did anything. Am I missing something? Your Honor, I do not recall off the top of my head what in this roughly 2,000-page record the government before the immigration judge did in response to that. What I can say is that the IJ did rule on the record, on the objection, and there was no request to cross-examine these officers, not at the hearing. He could... Mr. Diaz-Ortiz could have made that request, but by the time he made that request, the hearing had already concluded. He'd had his chance, and he was not... So other than allowing the report to in some way speak for itself, the government made no attempt to explain why it was reliable, why this point system made sense, why these summary assertions of gang membership were okay. I'm not aware of any attempt that the government made to support those propositions. Are you? Your Honor, I don't have anything to add to what has been put in the record and what Your Honor has summarized on that point. I'm asking what is in the record on this point. That's what I'm asking, not to supplement. What is in the record on the issue of... I understand. Your Honor, what I'm trying to say is that I'm not aware of anything else in the record beyond what Your Honor said. I'm not aware of anything else that is there. Chief Judge Howard, I had one last question from my perspective. Which I'll ask. Judge Howard, yes. From the government's perspective, what is the function of this database? I mean, it's obviously not meant to prove anything in a criminal trial. That's not why they're keeping it. Are there any regulations or things that... official documents that describe what purpose it's serving for the law enforcement authorities themselves? Because it's not obvious to me that they, in collecting this information, which they only say is to identify somebody as being reasonably suspected of being a gang member, is meant to be used in the way it was used in this case. I'm just trying to understand, what is the purpose of it? Understood, Your Honor. I am restricted in my answer to the information that's contained in the record, which does not address the broader purpose of the database, other than to explain that it is a database that's designed for collection of law enforcement information for those law enforcement purposes. Your Honor, I understand that my time has concluded. May I briefly address... If I might just perhaps supplement Judge Barron's question, and I think this apparently is in the record. One of the amici assert that the purpose of this gang database is to help law enforcement anticipate when there might be conflicts between gangs so that they can take some preventative measures, and it's collected for that purpose. At least in its original design, it had nothing to do with use in the way we see here in immigration proceedings. That has happened over time, but that is not why this information was collected. Does that confirm to your understanding that there is that representation in one of the amici briefs as to the purpose of this information? Do you share that understanding? Your Honor, with respect, I'm not able to express a position on that as it's not one that the government has addressed, and probably the board hasn't addressed that issue, and the record is, as Your Honor has noted, not expansive on that particular question. Seeing that my time has concluded... One of the other assertions in a brief before the court is that there's been so much public outrage over the use of these FOIs that at a city council meeting there was a pledge to reform how information was collected and that entries will no longer be made based upon simple association. Do you have a comment on that? I do, Your Honor. Thank you. I have two points on that. The first of the two points on that is that that information is not contained in the record. It was not presented before the board, and under 8 U.S.C. 1252, the court in reviewing the petition for review is restricted to... We're aware of that, Counselor. We're aware of that. Thank you, Your Honor, and then to my second point. Evidence that procedures have changed do not necessarily show that the procedures that were used in this particular case were unfair as applied to Mr. Diaz-Ortiz, and that gets to our prejudice arguments, which are in the briefs. I realize there may not be time to fully address those now, but there are a number of percipient facts that he does not dispute that were certainly no prejudice from the agency, considering the who, what, where, when that could have given the agency a reasonable basis to question is he telling the truth about what he said. And, Your Honor, I know time has passed... The facts, but the facts on their face without any conclusory statements are innocent. Innocent association. Your Honor, carrying a baseball bat in one's pants... He wasn't carrying a bat, Counselor. That's correct, but the fact that he was... If a person was carrying a bat and up to mischief still doesn't prove that they're a gang member. Your Honor, it was indeed... They might be engaging in criminal conduct, but it doesn't prove that they're a gang member. It's something that, under the totality of the circumstances, combined with all the other reports, could give the agency a basis to question whether Mr. Diaz-Ortiz was telling the truth. Your Honor, may I address... As time is out, may I address the remand question? Because I think it's important, as I know that's an issue before the court. Yes. Thank you. Counsel was asked about the scope of any remand that the court may be considering. Um, two points on that. First is that it would be inappropriate for the court to outright grant any form of relief, especially asylum, where there are a number of sub-issues related to asylum that the board just did not address. That would be a Chenery issue, and the board should have the first shot at that, related to asylum and any relief from protection. And then the second point is, if the court is entertaining a remand, I would ask that the court rule narrowly. There's, I would respectfully submit that there's not a need to address whether the gang database could ever possibly be considered. Just whether it was fair in this case, where he may have had notice and an opportunity to respond and so forth. And I would suggest that there isn't necessarily a need to be expansive in the scope of the remand order. I believe the court's customary remanded for further proceedings, not inconsistent with the court's ruling, would be more than sufficient to give the agency guidance, if the court were to order a remand. Judge Baird. Oh, please, Judge Baird. Does the government, does the government have a position with respect to the suggestion about the remand, if there were one, sending the case to a different IJ in light of the IJ's exposure to this evidence and views concerning it? I know we sometimes do that in sentencing. We'll give a case to a different district court judge to do the resentencing. I'm not aware of us doing it with respect to remand in an immigration proceeding, and I don't know what the government's view is about our authority to do that or how that would be accomplished and whether there's precedent concerning that. But if you don't have anything to say on that, immediately, I at least would be interested in a 28-J letter just addressing that question about our authority to do that and how that could be accomplished. Thank you, Your Honor. As that issue has not been briefed, I would take advantage of Your Honor's invitation to submit a 28-J letter addressing that. I would perhaps initially just suggest that that may not necessarily be needed here, but happy to flesh that out after the argument. We'll anticipate a 28-J letter from you in the next few days. Judge Lopez. Yes, thank you. Obviously, counsel, we're reluctant to let you sit down if I do have one more question. In your experience, in a remand situation, the question whether the record should be limited to what it was before the appeal or whether it can be expanded, is that something that gets sorted out before the IJ? Is that customarily how that issue is addressed, and hence, it would be appropriate to let the IJ sort that out? Would that be your view on that aspect of a remand? Yes, Your Honor. Judge Lopez, that would be my view on that, and I believe the agency's view as well, that in the event of an error, the customary ruling from a court is to remand for further proceedings not inconsistent. That would enable the board to exercise its prerogative to determine what those proceedings would need to look like. I would speculate, just me speculating, that would probably involve a remand from the board to an IJ, and then the IJ would then sort it out to determine what further proceedings would be necessary and appropriate, mindful of the court's order. I would ask for the court to be narrow in its ruling to enable the agency to exercise its prerogatives. Follow-on questions? Thank you. What do you have to say about the petitioner's suggestion that you shouldn't be given another chance? On the issue of whether the government should have the opportunity to put on witnesses for cross-examination, for instance, because Mr. Diaz-Ortiz did not request that until after the proceedings before the IJ had already concluded, it would seem to be somewhat unfair to the government not to have the chance at least to be heard on that question and let the board and immigration judge sort out that question. I think it would be most prudent to let the court send it, if the court were to remand, send it back to the agency, let the agency sort those questions out. If there's an issue, I'm sure there will be another appeal and the court can address that question in time, but I think to rule on a question that has not been adequately presented to the agency would not necessarily be a prudential use of the court's resources. Thank you, Mr. Moss. The court would like to thank all counsel for their additional briefing and their arguments in this case, and we'd like to express particular gratitude to Mr. Ahmed and all of the amici. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the hearing.